**SO ORDERED.**

**SIGNED this 25 day of September, 2006.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHILLIP L. HILGERS, | ) | Case No. 04-11019 |
| NANETTE HILGERS, | ) | Chapter 7 |
|     Debtors. | ) | |
| _____ | ) | |
| | ) | |
| D. MICHAEL CASE, TRUSTEE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Adv. No. 04-5281 |
| | ) | |
| STEPHEN A. HILGERS, as Trustee of the Blanche | ) | |
| A. Hilgers Trust; STEPHEN A. HILGERS, as | ) | |
| Trustee of the Jack E. Hilgers Trust; PHILLIP L. | ) | |
| HILGERS, as Trustee of the Laverne W. Hilgers | ) | |
| Trust; PHILLIP L. HILGERS and TURNBULL | ) | |
| OIL, Inc., | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

1

The chapter 7 trustee, D. Michael Case ("Case"), seeks a declaration that debtor Phillip Hilgers's ("Phillip" or "debtor") one-fourth remainder interest in the residue of three revocable inter vivos trusts is an asset of the bankruptcy estate and subject to turnover. Turnbull Oil, Inc.("Turnbull") also claims an interest in Phillip's remainder interest as a pre-petition garnishing judgment creditor. At a trial convened on June 14, 2006, the Court received by stipulation Case's exhibits 1-3 and Turnbull's exhibits A-F and heard the testimony of Stephen A. Hilgers, the trustee of two of the subject trusts. The Court also considered stipulations of fact contained in the final pretrial order and reviewed the parties' trial briefs. The Court makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**Jurisdiction**

This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (A). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and § 1334(b).

**Findings of Fact**

Phillip filed his chapter 7 bankruptcy petition on March 8, 2004.[1] Phillip is one of four children of Jack E. Hilgers and Laverne W. Hilgers and one of four grandchildren of Blanche A. Hilgers. Blanche is the settlor of the Blanche A. Hilgers Trust dated September 10, 1991.[2] Jack is the settlor of the Jack E. Hilgers Revocable Trust dated September 18, 1991.[3] Laverne is the

---

[1] Because debtor filed his bankruptcy petition prior to October 17, 2005, this case is governed by the Bankruptcy Code as it existed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). All statutory references will be to 11 U.S.C. § 101, et seq. (2004), unless otherwise specified.

[2] Ex. 1.

[3] Ex. 2.

2

settlor of the Laverne W. Hilgers Revocable Trust dated October 9, 1991.[4]

Phillip was a beneficiary under each Trust, having a remainder interest in the trust residue, and was also the successor trustee of the Laverne W. Hilgers Revocable Trust. Phillip's brother, Stephen A. Hilgers, was the successor trustee of the other two revocable trusts and, like his brother, a remainder residual beneficiary under all three trusts. Blanche, Jack and Laverne all died several years prior to Phillip's bankruptcy and administration of their estates was completed prior to Phillip's bankruptcy. The parties stipulate that there have been no distributions under the Trusts to the remainder beneficiaries,[5] even though the last death of the settlors and life estate beneficiary occurred with Jack's death on January 14, 2001. Blanche died August 10, 1997 and Laverne died July 26, 2000.

In general, each of the Trusts' corpus consists of numerous tracts of real estate, mineral rights, and overriding royalty interests in several oil and gas leases. Each of the Trusts follows a similar format, giving the settlor the income from the trust property during the settlor's lifetime and upon the death of the settlor, granting a life estate in the trust residue and a remainder interest in the residue to the four children or grandchildren as the case may be. Upon the death of Blanche, her Trust granted a life estate in the residue of the trust property to her son, Jack, and his wife Laverne, and upon the death of the last survivor of them, to her four grandchildren (which includes Phillip) in equal shares.[6] Upon the death of Jack, his Trust granted a life estate in the trust residue to his

---

[4] Ex. 3.

[5] The Court notes from its review of Phillip's Statement of Financial Affairs that royalty income was distributed to Phillip in 2003 under the Trusts. *See* Statement of Financial Affairs, Question 2.

[6] Ex.1, Art. VI, Residue.

3

wife, Laverne, and upon her death, the remainder of the residue would go to their four children in equal shares.[7] Upon the death of Laverne, her Trust granted a life estate in the trust residue to her husband, Jack, and upon his death, the remainder of the residue would go to their four children in equal shares.[8]

Each of the Trusts contains some identical provisions. Article IV in each Trust provides:

### ADMINISTRATION ON SETTLOR'S DEATH

> *On settlor's death, this Trust shall continue for the period required to administer settlor's estate and/or the assets of this Trust.* The successor trustee can accumulate income during this period. *After this period of administration is completed, any gifts or trusts designated below shall then be funded.* [Emphasis added.].

Article VI of each Trust deals with the disposition of the trust residue. Apart from the varying disposition of the residue, depending upon the Trust and settlor involved, the basic language is identical, providing:

### RESIDUE

> On the death of settlor, all property held in trust hereunder or distributed to this trust from settlor's estate which remains after the application of the provisions of this instrument, including any of the foregoing gifts in this trust which for any reason shall fail to take effect . . . shall be held in trust or disposed of as follows:

Paragraph (B) of Article VI of each Trust, contains what is commonly known as a "spendthrift" clause and states:

> It is expressly provided that the interest of any beneficiary hereunder shall not be subject to sale, assignment, pledge or transfer, nor shall such rights or interest or any part thereof, whether as to

---

[7] Ex. 2, Art. VI, Residue.

[8] Ex. 3, Art. VI, Residue.

> income or principal of this trust, be liable for the debts of such beneficiary or subject to attachment or to any judgment rendered against such beneficiary or to the process of any court in aid or execution of any judgment so rendered. Said beneficiary shall have no right to anticipate income, nor shall he have the right to alienate his interest in any manner whatsoever and any such transfers so attempted shall be null and void.

Each Trust gives the trustee (and the successor trustee) broad discretion to deal with the trust property as may be necessary to vest ownership or possession in the trust beneficiaries, including the right to retain, sell, lease, manage, exchange, transfer, and encumber the trust property.[9] In making distributions of the trust property, the trustee is authorized to make distributions in kind or in cash and to allocate particular assets among the beneficiaries.

Turnbull obtained pre-petition, a state court judgment against Phillip in the amount of $83,468.64. Turnbull garnished the Trusts on October 2, 2003, several months prior to Phillip's bankruptcy filing and over two years after the last settlor and life beneficiary under the Trusts had died. The validity of the Turnbull garnishment remains pending in Rooks County District Court and implicates the same issues currently before this Court.[10]

**Summary of Parties' Positions**

Phillip and Stephen, as trustees of the Trusts, contend that the Trusts contain valid and enforceable spendthrift clauses and as such, Phillip's remainder interest under the Trusts does not

---

[9] *See* Article VIII of the Trusts. Additionally, the trust instrument grants the trustee all of the powers provided by the Kansas Uniform Trust Code, KAN. STAT. ANN. § 101 et seq. (2004 Supp.)

[10] At a status conference held on January 20, 2005, the Court advised the parties that it would confer with District Court Judge Bouker regarding the pending cases. As a result of that communication, it was agreed that this Court would proceed forward and decide the issues presented in this adversary proceeding. *See* Dkt. 25.

constitute property of the estate under § 541(c)(2). In addition, they argue that the spendthrift clauses preclude the involuntary transfer of Phillip's remainder interest to Case and cannot be reached by Phillip's creditors under KAN. STAT. ANN. § 58a-502(b) and (c). Nor, Phillip and Stephan argue, can the Court compel a distribution to Phillip where distributions are subject to the trustee's discretion.[11] Phillip and Stephen seize upon the language in Article VI of the trust instruments that provides that the trust property "shall be held in trust or disposed of," as giving the trustee the power to withhold distributions indefinitely, even after the settlor and life beneficiaries have died. In short, they advocate the position that the revocable trusts may continue in perpetuity.

The bankruptcy trustee, on the other hand, responds to these arguments as follows. One, because the settlors and life estate beneficiaries under the Trusts died prepetition, Phillip's remainder beneficiary interest is fully vested and is an asset of the bankruptcy estate. Case reads the residual clause as being triggered upon the death of the settlor of each trust and that by use of the word "shall," means that the trust property was conveyed to the holder of the life estate upon the death of the settlor. Upon the settlor's death, Case argues, Phillip no longer had a beneficial interest in the trust; rather, he had a one-fourth interest in the property itself which was no longer protected by the spendthrift clause. Two, Case challenges the validity of the spendthrift clause under Kansas law. He contends that where the trustee and the beneficiary are one and the same person, it is a self-settled spendthrift trust and unenforceable.[12]

Turnbull aligns itself with the bankruptcy trustee but contends its interest in Phillip's one-

---

[11] KAN. STAT. ANN. § 58a-502(d)

[12] This would appear to be the case only for Phillip's interest in the Laverne Hilgers Revocable Trust of which he is both the successor trustee and a beneficiary of a one-fourth remainder interest in the residue.

6

fourth remainder interest is superior to Case's by virtue of its pre-petition garnishment. Like Case, Turnbull challenges the validity of the spendthrift provision of the Trusts under the facts of this case because the life estate beneficiaries all died prior to Phillip's bankruptcy and as a result, Phillip's remainder interest in the corpus became fully vested upon that occurrence. When Phillip became fully vested in the trust corpus, the spendthrift protection terminated. Citing to the Restatement (Second) of Trusts and the Kansas Uniform Trust Code, Turnbull further argues that the Trusts terminated upon the death of the life estate beneficiaries and that the trustees were obligated to wind up the Trusts and make expeditious distribution to the remainder beneficiaries. Turnbull contends that the trustees had no discretion to withhold distributions of the corpus upon termination of the Trusts so as to defeat the rights of creditors.

**Conclusions of Law**

The Court will address in order the two primary issues presented: (1) whether the spendthrift provisions protect Phillip's one-fourth remainder interest in the trust corpus from the claims of creditors and the bankruptcy trustee; and (2) whether the Trusts terminated by their terms and whether the trustees can be compelled to wind-up the Trusts and distribute the trust corpus among the remainder beneficiaries.

In reaching its conclusions of law, the Court looks to the terms of the Trust instruments, the provisions of the Kansas Uniform Trust Code ("KUTC"), KAN. STAT. ANN. § 58a-101 *et seq.*

7

(2005),[13] and the law of Restatement of Trusts.[14] As observed in a recent law review article, the Uniform Trust Code (substantially adopted by the KUTC) was closely coordinated with the Restatement (Third) of Trusts, and both supply trust law where decisional law is commonly lacking.[15] The terms of the Trusts may not override certain provisions of the KUTC.[16] Finally, the common law of trusts and principles of equity supplement the KUTC[17] and the rules of construction applicable to interpreting wills under Kansas law, are extended to trusts.[18]

### 1. The Revocable Trusts Terminated Upon the Death of the Life Beneficiaries and the Spendthrift Provisions were no Longer Effective.

A determination of whether Phillip's remainder interest in the Trusts is subject to a valid spendthrift clause is necessary because under 11 U.S.C. § 541(c)(2) property subject to a spendthrift trust is excluded from property of the estate.[19] The determination of whether the Trusts contain valid

---

[13] Even though the Trusts in question were created long before the enactment of the KUTC in 2002 and the deaths triggering the trust distributions likewise occurred prior to the January 1, 2003 effective date of the KUTC, the KUTC is applicable if it does not prejudice the rights of the parties. *See* KAN. STAT. ANN. § 58a-1106(a)(3). The KUTC applies to the revocable inter vivos trusts at issue in this case. *See* KAN. STAT. ANN. § 58a-102.

[14] The Kansas courts look to the Restatement of Trusts when there is no law directly on point. *In re Estate of Sanders*, 261 Kan.176, 183, 929 P.2d 153 (1996).

[15] David M. English, *The Kansas Uniform Trust Code*, 51 U. KAN. L. REV. 311, 313 (2003).

[16] *See* KAN. STAT. ANN. § 58a-105(b)(2) (the duty of the trustee to act in accordance with the purposes of the trust), § 58a-105(b)(3) (the requirement that a trust and its terms be for the benefit of its beneficiaries), § 58a-105(b)(4) (the power of the court to terminate a trust), and § 58a-105(b)(5) (the effect of the rights of creditors to reach a trust).

[17] KAN. STAT. ANN. § 58a-106.

[18] KAN. STAT. ANN. § 58a-112.

[19] *In re Hayes*, 168 B.R. 717, 723-24 (Bankr. D. Kan. 1994).

8

spendthrift provisions is a property law issue that is determined under state, rather than federal law.[20] Accordingly, the Court considers Kansas law on spendthrift trusts.

The KUTC recognizes and enforces valid spendthrift clauses.[21] In *In re Estate of Sowers*,[22] the appellate court explained many of the legal principles of a spendthrift trust and the requirements for creating a valid spendthrift trust. Such a trust is created to provide a fund for the maintenance of a beneficiary and at the same time secure the fund against the beneficiary's improvidence or incapacity. Restrictions on alienation or transfer of the trust fund are the usual incidents of a spendthrift trust.

In this case, the Court concludes that the language in section (B) of Article VI of each Trust, contains the necessary express spendthrift language.[23] It clearly states that a beneficiary under the Trust has no right to sell, assign, pledge or transfer his interest under the Trust and no right to alienate his interest in any manner whatsoever. It further contains language indicating an intent to preclude the interest from being liable for the debts of the beneficiary or subject to attachment and execution by the beneficiary's creditors. The Court has little doubt that during the settlor's lifetime, Phillip's remainder interest in the residue of the trust corpus was protected from the reach of creditors by virtue of this valid spendthrift clause.[24]

---

[20] *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

[21] KAN. STAT. ANN. § 58a-502(a).

[22] 1 Kan. App. 2d 675, 680, 574 P.2d 224 (1977).

[23] The KUTC states that by simply using language that the beneficiary's interest is held subject to a spendthrift trust is now sufficient to create a spendthrift provision and restrain the alienation or transfer of the beneficiary's interest. *See* KAN. STAT. ANN. § 58a-502(b).

[24] With respect to the Laverne Hilgers Revocable Trust, Phillip is both the successor trustee and one of four remainder beneficiaries. Because the Court concludes that Phillip's

9

This conclusion does not, however, end the analysis. In this case, both the settlor and life beneficiary of the trust residue under each revocable Trust died pre-petition.[25] The Court looks at the nature of an asset on the date the bankruptcy petition was filed to determine whether the asset is included in property of the estate.[26] The question thus becomes what interest Phillip had in the trust residue on the date of filing -- March 8, 2004, and whether the spendthrift protections remained in effect.

### A. The Trusts Terminated Upon the Death of the Life Beneficiaries and Phillip's Remainder Interest Vested in the Residue.

Because the basic format for all three revocable trusts is the same, the Court will reference the Laverne W. Hilgers Revocable Trust for its analysis and interpretation of the terms of the Trusts.[27] In general, the settlor of the trust was entitled to the income from the trust property during the settlor's lifetime.[28] Upon the death of the settlor, all property held in trust passed to a designated life beneficiary and upon the death of the life beneficiary all of the trust property remaining (the

---

remainder interest vested pre-petition, the Court need not reach the question of whether his dual status as trustee and beneficiary renders the spendthrift clause ineffective. *See In re Estate of Sowers*, *supra* at 229 (A *settlor* may not create a spendthrift trust for himself); Restatement (Third) of Trusts § 58(2), comment e. The Court observes that a person can be both a trustee and beneficiary under a trust provided that he is not the *sole* trustee and the *sole* beneficiary. *See* Restatement (Second) of Trusts § 99; Restatement (Third) of Trusts § 58, comment b(1).

[25] Once the settlors died, the Trusts became irrevocable. *See Neeley v. Neeley*, 26 Kan. App. 2d 924, 926, 996 P.2d 346 (2000).

[26] *Cf. In re Roth*, 289 B.R. 161 (Bankr. D. Kan. 2003) (Debtor's interest as a contingent beneficiary in assets of revocable inter vivos trust containing spendthrift clause established by his father, was not property of the estate where debtor's father was living at the time he filed bankruptcy petition).

[27] Ex. 3. The same analysis and interpretation would be applied to the other two Trusts.

[28] Ex. 3, Art. III.

10

residue) passed to the remainder beneficiaries (the four children Jack Jr., Jane, Stephen and Phillip). The pertinent language employed in the trust instruments to effectuate this disposition of trust property was as follows:

ARTICLE VI

RESIDUE

On the death of settlor, all property held in trust hereunder or distributed to this trust from settlor's estate which remains after the application of the provisions of this instrument, including any of the foregoing gifts in this trust which for any reason shall fail to take effect . . . shall be held in trust or disposed of as follows:

(A) My husband, Jack E. Hilgers, shall have a life estate in all the residue of said property, real and personal for his lifetime, the income to be distributed annually or on more frequent basis, and *on his death the remainder interest in all of said property, shall be divided by the successor trustee as equitably as possible so that my four children above named shall each share equally in the proceeds of this trust* . . .

Although this language does not expressly indicate that the trust terminates upon the death of the life beneficiary and distribution to the remainder beneficiaries, the Court concludes that termination is implicit. Upon the death of the life beneficiary, the residue *shall be divided* among the remainder beneficiaries so that they *share equally in the proceeds of this trust*. Once the life beneficiary dies and the residue is divided equally among the remainder beneficiaries, there is nothing further to administer with respect to the trust. No further purpose of the trust remains once the residue passes to the remainder beneficiaries.

This interpretation is consistent with Article IV of the Trusts:

On settlor's death, this Trust shall continue for the period required to administer settlor's estate and/or the assets of this Trust. . . .. After this period of administration is completed, any gifts or trusts designated below *shall then be funded.*

In short, the trust instrument clearly contemplates a finite period and termination of the trust upon

11

the mandatory distribution to the remainder beneficiaries. The Court rejects Phillip's position that the trust continues indefinitely until the trustee in his discretion decides to distribute the residue among the remainder beneficiaries. The contemplated distribution to the remainder beneficiaries is not subject to the trustee's discretion. The sole contingency that triggers distribution of the Trust corpus to the remainder beneficiaries has occurred (*i.e.* the death of the life beneficiary) thereby causing the remainder beneficiaries' interests to vest. The Court therefore concludes that Phillip's future remainder interest in the trust corpus vested shortly after the death of the life beneficiary (Jack Hilgers) on January 14, 2001. Thus, Phillip had a one-fourth vested interest in the trust corpus on the date of filing his bankruptcy petition (March 8, 2004) and the spendthrift clause was no longer effective. Phillip's one-fourth interest in the trust corpus was property of his bankruptcy estate and subject to the claims of creditors.

This interpretation is supported by the KUTC and the Restatement (Third) of Trusts. KAN. STAT. ANN. § 58a-410(a) recognizes that a trust may terminate by its terms even though the trust instrument may be silent concerning termination. That section states:

> . . . a trust terminates to the extent the trust is revoked or *expires pursuant to its terms, no purpose of the trust remains to be achieved,* or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve.

This section of the KUTC is consistent with the Restatement (Third) of Trusts § 61 (2003) which provides:

> A trust will terminate in whole or in part upon the expiration of a period or the happening of an event as provided by the terms of the trust; in the absence of such a provision in the terms of the trust, termination will occur in whole or in part when the purpose(s) of the trust or severable portion thereof are accomplished.

Comment b to § 61 states that a trust may be created to last until the happening of a designated event. In the absence of trust language specifying the duration of the trust, a trust will terminate

upon the fulfillment of its purpose. Comment b goes on to state:

> Thus, a fairly typical trust may provide for the support of a designated beneficiary for life, with the trust instrument specifically stating that upon the life beneficiary's death the trust is to terminate and that the trust property is then to be distributed to one or more designated remainder beneficiaries.
>
> **Illustration:**
>
> 1. W devised a portion of her estate to T in trust to provide for the support and care of H during his lifetime, and further provided that "upon H's death, the trust property shall be distributed by right of representation to those of my issue who are then living." The trust will terminate upon H's death.
>
> *On the other hand, the terms of a trust for such a purpose might fail to specify when the trust is to terminate, or when the property is to be distributed, but instead leave the settlor's intention to be inferred from the words and purposes of the trust. For example, if the settlor transfers property in trust for the support of a designated beneficiary for life and then for the benefit of another or others absolutely, the inference from the terms of the trust is that the settlor intended the trust to terminate on the life beneficiary's death even though that time of termination or distribution is not stated in specific language.* Sometime in a case of this type the inference to be drawn is not so readily recognizable and becomes a matter for interpretation. (Emphasis added.).[29]

Here, the language of the Trusts unambiguously transfers the trust residue to the remainder beneficiaries absolutely upon the death of the life beneficiaries.[30] Nothing remains to be

---

[29] *See also* Restatement (Second) of Trusts § 334, Comment b.

[30] At trial, Stephen Hilgers testified that he exercised his discretion to withhold distribution of the trusts' corpus because of potential adverse tax consequences that might result. He cited, as his authority for doing so, the last paragraph of Article VIII of the Trusts. With regard to the real estate in the Trusts, special valuation had been elected under section 2032A of the Internal Revenue Code. Stephen believed that additional estate taxes would be triggered by distributing the trusts' real estate *if* the beneficiaries discontinued use of the real estate as a family business or family farm. *See* Turnbull Ex. D and E. No evidence was produced that the beneficiaries would discontinue use of the real estate that would trigger additional taxes. The Court concludes that this purported justification does not negate the dispositive provisions of the Trusts or their termination upon the life beneficiary's death. The paragraph of Article VIII that Stephen cites, starts with the language "In dividing or distributing the Trust assets . . .". It gives the trustee discretion with regard to the form or manner of distribution of trust assets by

13

accomplished by the Trusts. Phillip's vested one-fourth interest in the residue of the Trusts is property of the estate, subject to turnover, and subject to the claims of creditors.

2. **Upon Termination of the Trusts, the Trustees were Duty-Bound to Wind-up the Trusts and Distribute the Trust Corpus Among the Remainder Beneficiaries.**

Stephen and Phillip contend that as trustees of the Trusts, they cannot be compelled to distribute the residue to the remainder beneficiaries in contravention of the spendthrift provision and the trustee's discretion. The Court disagrees. As noted above, the spendthrift provision in each trust became ineffective upon the termination of the trusts at the time the life beneficiary died. The last death of the life beneficiaries occurred January 14, 2001, more than five years ago. In addition, while the trustees have been given discretion under the Trusts in the exercise of some of their duties, no discretion was granted to the trustees to wind-up the Trusts upon their termination. No discretion was vested in the trustees to withhold distribution of the residue upon the death of the life beneficiaries. Article VI (A) of the Trusts clearly obligates the trustees to distribute the residue of the Trusts once the life beneficiary dies: " . . . and on his death the remainder interest in all of said property, *shall be divided by the successor trustee* as equitably as possible so that my four children above named shall each share equally in the proceeds of this trust." Moreover, the Trusts confer no discretion upon the trustees to deal with the trust property in a fashion contrary to the Trusts'

---

permitting in kind or in cash distributions and the authority to allocate particular assets. It does not, however, confer discretion on the trustee to withhold distributions upon termination of the trusts. Article IX, paragraph C of the Trusts likewise gives the trustee discretion for electing certain estate tax treatment but it does not give the trustee discretion to withhold mandatory distributions that are triggered by the occurrence of the life beneficiary's death. Nor could the Trusts have provided to override the KUTC in this fashion. KAN. STAT. ANN. § 58a-105(b) sets forth those provisions of the KUTC that may not be superceded by the terms of a trust and includes the trustee's duty to act in accordance with the purpose of the trust and the court's power to terminate a trust.

dispositive provisions.

The KUTC is clear on these points. Article 8 of the KUTC speaks to a trustee's duties in this regard. Section 58a-801 requires the trustee "to administer the trust in good faith, *in accordance with its terms and purposes and the interests of the beneficiaries,* and in accordance with this code." Section 58a-802(a) reiterates, as part of the duty of loyalty, this duty to administer the trust consistent with the terms of the trust. Section 58a-814 requires a trustee to exercise his discretionary powers "in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." Section 58a-817(b) addresses the trustee's duty to make distribution of the trust corpus upon termination of the trust. It states:

> Upon the occurrence of an event terminating . . . a trust, *the trustee shall proceed expeditiously to distribute the trust property to the persons entitled to it,* subject to the right of the trustee to retain a reasonable reserve for the payment of debts, expenses, and taxes. (Emphasis added.).[31]

The Trusts terminated, at the latest, with Jack Hilgers' death (the last surviving life beneficiary) on January 14, 2001. The passage of more than five and one-half years with no distribution to the remainder beneficiaries is not "expeditious" under any circumstance. Nor is it expeditious to delay or withhold the distributions for a three year period before Phillip filed bankruptcy.

Stephen's and Phillip's contention that they can withhold the distribution of the residue indefinitely and thereby place Phillip's remainder interest beyond the reach of creditors is plainly not correct. Nor are they correct that the Court and creditors are powerless to compel the distribution. Section 58a-506 of the KUTC provides:

---

[31] *See also,* KAN. STAT. ANN. § 58a-816(26) (On termination of the trust, the trustee may exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it.).

15

> Whether or not a trust contains a spendthrift provision, a creditor . . . of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the mandated distribution date.

Section 58a-1001(b) empowers the Court to order a trustee to perform his duties, as provided:

> To remedy a breach of trust that has occurred or may occur, the court may:
> (1) Compel the trustee to perform the trustee's duties; . . .

Based upon the foregoing provisions of the KUTC, and the Trust instruments, the trustees were required to promptly wind-up administration of the Trusts upon their termination in 2001 and distribute the residue among the remainder beneficiaries. Phillip's one-fourth vested remainder interest under the Trusts is subject to the claims of creditors and turnover to the bankruptcy trustee, notwithstanding the fact that the trustees have not distributed his one-fourth interest. The trustees are ordered to distribute the residue of the Trusts to the remainder beneficiaries in accordance with Article VI of the Trusts, except that Phillip's one-fourth interest of the trust residue is to be turned over to the bankruptcy trustee.

The trustees and Phillip shall be given thirty (30) days from the date of this Memorandum Opinion to distribute the Trust property to the remainder beneficiaries and to turnover to the bankruptcy trustee Phillip's one-fourth share of the distribution. The bankruptcy trustee shall hold such property pending further order of the Court and subject to the garnishment lien of Turnbull.

### 3. Priority Between the Bankruptcy Trustee and Turnbull to Phillip's One-Fourth Remainder Interest.

Here, the parties stipulate that judgment creditor Turnbull garnished the Trusts on October 2, 2003, prior to Phillip filing his chapter 7 bankruptcy petition on March 8, 2004 and more than two and one-half years after the last life beneficiary's death, the point in time at which the Court

16

concludes the Trusts terminated. Thus, at the time Turnbull executed its garnishment, Phillip's one-fourth vested remainder interest in the trust corpus was not yet property of the estate but it had lost its spendthrift protection.[32] Turnbull's garnishment attached to Phillip's one-fourth share of the trust property and became a first and prior lien on the trust property.[33] The distributions to Phillip of his one-fourth remainder interest under the Trusts and their turnover to the trustee shall be subject to Turnbull's garnishment lien.

A Judgment on Decision shall issue this date. Further, the trustee is ordered to provide a copy of this Memorandum Opinion to the state district court in which Turnbull's garnishment is pending.

# # #

---

[32] *See* 11 U.S.C. § 541(a)(1).

[33] *See* KAN. STAT. ANN. § 60-732(c) (2005).